# IN THE COURT OF APPEALS OF IOWA

No. 22-1182
Filed March 8, 2023

IN RE THE MARRIAGE OF RILEY DEAN MANTEY
AND LACOLE NOANN MANTEY

Upon the Petition of
RILEY DEAN MANTEY,
          Petitioner-Appellee,

And Concerning
LACOLE NOANN MANTEY,
          Respondent-Appellant.
_____

          Appeal from the Iowa District Court for Boone County, James A. McGlynn,

Judge.


          Lacole Mantey appeals the district court's order on Riley Mantey's petition

to modify the decree dissolving their marriage. **AFFIRMED.**


          Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

          Angelina M. Thomas of Newbrough Law Firm, LLP, Ames, for appellee.


          Heard by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**VAITHESWARAN, Presiding Judge.**

Lacole and Riley Mantey married in 2017, had two children in 2018 and 2019, and divorced in 2020. The stipulated dissolution decree afforded them joint legal custody and joint physical care of the children pursuant to a two day-two day-three day schedule.

About two months after the dissolution decree was filed, Lacole moved from Boone, Iowa, to Wymore, Nebraska, about four hours away. The couple agreed to exchange the children every two weeks, weather permitting, and Lacole agreed to return to Boone when the older child was ready for kindergarten. If she did not, she agreed to "forfeit residential custody of the children." The parents further agreed not to "take each other back to court" in the interim.

Lacole did not return to Boone. In 2021, she filed an application to modify the dissolution decree to afford her physical care of the children. Riley responded with his own request for physical care. Following trial, the district court modified the decree to place the children in Riley's physical care. Lacole appealed.

Lacole contends "the district court improperly concluded that it [was] in [the children's] best interests to end the parties' shared physical custody and place [the children] in Riley's physical care." In her view, the court (1) ignored the report and testimony of a child and family reporter and (2) failed to consider her greater involvement in the children's lives.

A parent seeking modification of a joint physical care arrangement must establish a substantial change of circumstances not contemplated by the district court when the decree was entered that is more or less permanent, and must prove superior caretaking ability. *See In re Marriage of Harris*, 877 N.W.2d 434, 441

(Iowa 2016); *see also In re Marriage of Lehman*, No. 21-0468, 2021 WL 5919046, at *3 (Iowa Ct. App. Dec. 15, 2021) (citing opinions requiring proof of "better" rather than "superior" care and stating "the terms are synonymous"). The parents agree Lacole's move amounted to a substantial change of circumstances. They disagree on who was the superior caretaker.

The child and family reporter appointed by the district court met with both parents and made detailed findings. Contrary to Lacole's assertion, she did not provide a "recommendation that Lacole should receive the children's physical care." Her report stated, "There is really no answer as to who is clearly the better parent full-time." When asked about the statement at trial, the reporter agreed the report did not really say one parent was superior to the other. She continued, I tried to find . . . factors that made one parent superior as primary caretaker, but my opinion . . . [is] [t]hey are both bonded and good parents to these kids." In short, neither the child and family reporter's report nor her testimony supports a conclusion that Lacole was the superior caretaker.

That said, the child and family reporter gave several pertinent opinions on underlying parenting factors. She stated, if the focus was on "continuity of placement, it would make sense for the [c]ourt to establish Riley as the primary caretaker" because he was "residing in the marital home . . . where the children" grew up and he had no control over Lacole's decision to move. She also noted that "[t]he children . . . seem[ed] to get hurt less by accidents in his care." She cited Lacole's multiple moves and unstable relationships and said Lacole had "poor decision-making capacity about those items and [was] impulsive regarding relationships that could put her children in an unsafe environment."

The reporter's findings on this score were corroborated by Lacole. She admitted moving five times within Nebraska, dating two men, and marrying and divorcing a third—all within the span of about nineteen months. While Riley also engaged in short-term relationships following the divorce, there is no question he was the more stable of the two.

The child and family reporter recognized Lacole played a greater role in the children's daily lives. In the reporter's words, she took "the wheel and [got] things done for these kids" and was "on top of education, doctor's visits, and other basic appointments and necessities for the children." But Riley took steps to increase his involvement in these activities. He transitioned to a "family-friendly employer," sought out daycare providers in Boone, looked into preschools, and investigated speech therapy for the older child after learning of a teacher's recommendation to pursue that option. Lacole impeded several of his initiatives. She objected to the daycare providers, unilaterally enrolled the older child in a Nebraska preschool, and failed to immediately share a Nebraska-prepared individualized education plan with Riley. As the child and family reporter stated, she was "quick to blame Riley for any issue with the children."

In the end, we agree with the district court that Lacole was unable to "provide a safe, stable and secure home for the children." On our de novo review, we conclude Riley was the superior caretaker and the district court acted equitably in modifying the dissolution decree to grant him physical care of the children.

Riley seeks appellate attorney fees. An award rests within our discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). The child support guidelines worksheet indicates Riley earned significantly more than

Lacole. Based on the earnings disparity, we deny Riley's request to have Lacole pay a portion of his appellate attorney fees.

**AFFIRMED.**